UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| DIANE C. TIPTON,<br><br>    Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>    Defendant. | Case No.: 1:13-cv-00359-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

      Pending before this Court is Diane C. Tipton's Petition for Review (Docket No. 1), seeking review of the Social Security Administration's final decision to deny her claim for Title II Social Security disability benefits and Title XVI Supplemental Security Income benefits. The action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. ADMINISTRATIVE PROCEEDINGS

      In May/April 2010, Diane C. Tipton ("Petitioner") filed an application for Social Security disability benefits and protectively filed an application for Supplemental Security Income benefits – in both applications, Petitioner alleged a disability onset date of March 1, 2010. Petitioner's claims were initially denied on June 10, 2010 and, again, on reconsideration on September 2, 2010. On or around October 15, 2010, Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On November 14, 2011, ALJ Lloyd E. Hartford held a hearing in Boise, Idaho, at which time Petitioner, represented by attorney Debra

**MEMORANDUM DECISION AND ORDER - 1**

Young Irish, appeared and testified. An impartial medical expert, Thomas E. Atkin, and an impartial vocational expert, Anne F. Aastum, also appeared and testified.

On January 9, 2012, the ALJ issued a decision denying Petitioner's claims, finding that Petitioner was not disabled within the meaning of the Social Security Act. Petitioner timely requested review from the Appeals Council on February 1, 2012. On July 18, 2013, the Appeals Council denied Petitioner's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted her administrative remedies, Petitioner timely files the instant action, raising the following issues: (1) whether the ALJ's finding that Petitioner's residuals from her stroke are not severe is properly supported; (2) whether the ALJ's finding that Petitioner's allegations and testimony are not credible is properly supported by the evidence; and (3) whether the ALJ's residual functional capacity accurately reflects the limitations supported by the record. *See* Pet.'s Brief, pp. 5-6 (Docket No. 18). Petitioner therefore requests that this Court reverse the ALJ's decision or, alternatively, remand the case for further proceedings. *See id*. at p. 13; *see also* Pet. for Review, p. 2 (Docket No. 1).[1]

## II. **STANDARD OF REVIEW**

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42

---

[1] On October 9, 2013 (after this action was initiated but before Petitioner filed her opening brief), the Social Security Administration granted Petitioner's subsequent application for Title II Social Security disability benefits and awarded Petitioner disability benefits beginning August 2012. *See* 10/9/13 Ltr., attached as Ex. A to Pet.'s Brief (Docket No. 18, Att. 1).

**MEMORANDUM DECISION AND ORDER - 2**

U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance (*see Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony (*see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)), resolving ambiguities (*see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)), and drawing inferences logically flowing from the evidence (*see Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's

**MEMORANDUM DECISION AND ORDER - 3**

construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III. DISCUSSION

**A.     Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of her age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner has not engaged in substantial gainful activity since March 1, 2010, the alleged disability onset date. (AR 24).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration

**MEMORANDUM DECISION AND ORDER - 4**

requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner had the following severe impairments: (1) status-post abdominal wall sarcoma, (2) status-post sarcoma resection, (3) bipolar disorder, and (4) depression. (AR 24).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *Id.* Here, the ALJ concluded that Petitioner's above-listed impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments. (AR 25).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite

**MEMORANDUM DECISION AND ORDER - 5**

limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that Petitioner has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), except "work must be low in stress, defined as having few changes in work settings or routines." (AR 26).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). If the claimant is able to do other work, she is not disabled; if the claimant is not able to do other work and meets the duration requirement, she is disabled. Here, the ALJ found that Petitioner is capable of performing past relevant work as a hotel desk clerk because, according to the ALJ, such work does not require the performance of work-related activities precluded by Petitioner's residual functional capacity. (AR 29).

**B.  Analysis**

    1.  <u>The ALJ Properly Supported His Finding that Residuals from Petitioner's Stroke Were Not Severe</u>

The ALJ acknowledged that Petitioner suffered a stroke in the 1990's, but concluded that any associated impairment was not severe because (1) "she continued to work thereafter," (2)

"[a]t no point in the recent records did [Petitioner] complain of work-related limitations due to her stroke," and (3) "no objective treatment notes indicate any further symptoms from [her stroke]." (AR 25). Through this appeal, Petitioner argues that her stroke residuals caused more than minimal limitations in basic work activities (a limited ability to sustain fine manipulation and an inability to lift more than 10 pounds) and, as such, "[t]he ALJ should have included this as a severe impairment . . . ." Pet.'s Brief, p. 7 (Docket No. 18). There is certainly room in the record to make this argument, but it did not persuade the ALJ.

There is no question that Petitioner suffered a stroke in 1996 that affected her right side. However, other than pointing to several instances in the record making note of the incident and its corresponding physical impact (some of which actually preceded Petitioner's alleged March 1, 2010 disability onset date), Petitioner points to no evidence suggesting that the stroke's residuals contribute to any greater functional limitations than the ALJ separately assessed relative to Petitioner's other recognized severe impairments. For example, Petitioner cites to the following:

- <u>February 16, 2007</u>: More than three years before her alleged disability onset date, Petitioner visits Amber Vickers, PA-C, "to establish care and get refills on high cholesterol medication, depression, and high blood pressure." Though Petitioner claimed she "has a hard time with numbers and writing at times," PA-C Vickers noted normal sensation, reflexes, coordination, muscle strength, and tone. There is no mention of any significant stroke-related limitations. (AR 506-509).

- <u>December 30, 2008</u>: More than a year before her alleged disability onset date, Petitioner visits Licensed Psychologist, Michael Johnston, Ph.D., for a "Psychological Evaluation." In relaying her history to Dr. Johnston, Petitioner "indicate[s] she had a stroke, resulting in some loss of motor functioning in the right side of her body, vision issues, sensation problems, and poor concentration." After running various tests and procedures, Dr. Johnston listed off various "functional limitations" (none of which speak to stroke-related impairments specifically) but nonetheless identified "possible jobs" for Petitioner as including human resource worker, bookkeeper, meter

reader, food preparation, delivery driver, shelf stocker, production worker, computer operator, postal clerk, transcriptionist, floral arranger, information booth teller, or bank teller. (AR 614-619).

- June 9, 2010: Nearly three months after her alleged disability onset date, Robert E. Vestal, M.D., performs a "Case Analysis." Therein, Dr. Vestal indicated that Petitioner "has a history of . . . cerobrovascular disease (S/P left stroke with right carotid endarterectomy in 1997) with residual dysfunction of right hand." Dr. Vestal concluded that Petitioner "does not meet or equal a listing" and "[i]t is reasonable to project that she will be able to perform light work activities within 12 months of the onset date with limitation of the use of her right hand due to residual effects of her stroke." (AR 458).

- June 10, 2010: Nearly three months after her alleged disability onset date, Ward Dickey, M.D., performs a "Physical Residual Functional Capacity Assessment." While Dr. Dickey indicated that Petitioner had fine manipulation limitations, he clarified that Petitioner had "minimal functional deficit" and that Petitioner would only be "limited from constant and repetitive use to frequent right-sided fingering."[2] (AR 459-466).

- June 18, 2010: Nearly three months after her alleged disability onset date, Petitioner visits Nikki Rota, PA-C, complaining of anxiety and depression. As to Petitioner's "past medical history," it was noted that she suffered a stroke in 1996 and had "some [right-]sided deficit." Even so, Petitioner denied any "disturbances in coordination." (AR 487-489).

- September 28, 2010: Roughly six months after her alleged disability onset date, Petitioner visits Nurse Practitioner Colleen K. Lambertz in between cancer treatments/follow-ups (Petitioner was diagnosed with synovial sarcoma of the abdominal wall in March 2010), complaining of a "[s]ense of falling, and vomiting with dizziness." At that time, it was noted that Petitioner "has a history of 'massive stroke' in 1998, with residual right hand weakness" and that "[h]er right hand rapid alternating movements are slightly weak compared to the left." Still, Petitioner's strength was listed at "5/5" for "upper and lower extremities." (AR 572-574).

---

[2] The undersigned recognizes that Dr. Dickey's description of Petitioner's manipulative limitations in this latter respect could have different meanings – either (1) that Petitioner is limited in constant and repetitive use, *including* frequent right-sided fingering, or (2) that Petitioner is limited from constant and repetitive use, *but* is capable of frequent right-sided fingering. Regardless, neither interpretation prevents a finding that Petitioner is capable of light work as the ALJ eventually determined.

**MEMORANDUM DECISION AND ORDER - 8**

- January 24, 2011: Less than one year after her alleged disability onset date, Petitioner visits Norman Zuckerman, M.D., in what appears to be a scheduled follow-up appointment relative to her cancer treatment. At that time, it was noted that Petitioner has "mild residual right hand dysfunction." Petitioner also indicated that "[s]he works at a counter and states she has to stand eight hours a day but because of symptoms of *fatigue*[3] is unable to do so and requests disability." Ultimately, Dr. Zuckerman concludes that Petitioner "is in complete remission" and schedules to see her "for routine follow-up in three months' time." During (AR 620) (emphasis added).

*See* Pet.'s Brief, pp. 2 & 6-7 (Docket No. 18).

These instances merely reveal that, historically speaking, Plaintiff had a stroke in 1996 and has had to contend with "mild" manipulative limitations of her right hand; they do not demonstrate that these limitations ever prevented her from performing light work. *See, e.g.*, (AR 82) (medical expert, Thomas E. Atkin, testifying at hearing that "as is indicated in the record, [Petitioner] has functioned cognitively within an acceptable range since that stroke."). To be sure, at most, these instances suggest that Petitioner's subjective claim of disability is more closely related to generalized fatigue rather than from any residuals stemming from her stroke nearly 15 years before.

It is not enough here to point to the fact of, or recite particulars of medical records making reference to, her stroke and her stroke-associated problems with her right hand. Petitioner also must finish connecting the causation dots. She must show that these problems/residuals result in physical limitations that (1) significantly limit her ability to perform basic work activities (in essence, the definition of "severe" under the Social Security Act (*see supra*)), and (2) are not already subsumed by the ALJ's consideration of Petitioner's actually-

---

[3] That same day, in a "Progress Note" from Stephen C. Smith, M.D., it was similarly noted that Petitioner "continues to fatigue very easily and is not able to work." (AR 622).

**MEMORANDUM DECISION AND ORDER - 9**

determined-to-be severe impairments and corresponding RFC assessment. *See, e.g.*, *Bigpond v. Astrue*, 280 Fed. Appx. 716, 718 (10th Cir. 2008) ("Although [the petitioner] recites what these records say, she does not explain how they show that her cardiac problems made her unable to engage in any substantial gainful activity."). Simply put, the offered medical evidence does not support such an argument.[4]

    2.    <u>Petitioner's Credibility</u>

Petitioner strongly disagrees with the ALJ's challenge to her credibility. *See* Pet.'s Brief, pp. 8-11 (Docket No. 18). It is black letter law in these cases that as the trier of fact, the ALJ is in the best position to make credibility determinations and, for this reason, his determinations are entitled to great weight. *See Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990). In evaluating a claimant's credibility, the ALJ may consider claimant's reputation, inconsistencies either in testimony or between testimony and conduct, daily activities, past work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 791 (9th Cir. 1997). In short, "[c]redibility decisions are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). It should be noted, however, that to reject a claimant's testimony, the ALJ must make specific findings stating clear and convincing reasons for doing so. *See Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)). Here, the ALJ provided sufficient reasons for calling into question Petitioner's credibility.

Here, the ALJ agreed with Petitioner that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but then went on to conclude that her

---

[4] To the extent Petitioner argues that the ALJ did not properly consider her testimony at the November 4, 2011 hearing (*see* Pet.'s Brief, p. 7 (Docket No. 18)), such an argument is addressed later within this Memorandum Decision and Order.

**MEMORANDUM DECISION AND ORDER - 10**

"statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with [Petitioner's] residual functional capacity assessment." (AR 27).[5] In reaching this conclusion, the ALJ listed the particular reasons for rejecting Petitioner's testimony concerning her alleged disability and inability to work.

For the most part, the ALJ reviewed "the objective medical evidence" to buttress his credibility determination, concluding that "the record does not support [Petitioner's] allegations concerning disabling impairments as of . . . the alleged [disability] onset date." *See id*. For example, after reviewing the treatment notes addressing Petitioner's cancer, the ALJ acknowledged that, while Petitioner genuinely experienced symptoms typically associated with a cancer diagnosis, they were limited given that her cancer was successfully treated. *See id*. ("In sum [Petitioner] did undergo surgery to resect her cancer, which certainly suggests that the symptoms were genuine. While that fact would normally weigh in [Petitioner's] favor, it is

---

[5] Petitioner suggests that the ALJ's credibility analysis was improperly driven by her residual functional capacity assessment – essentially arguing that any testimony at odds with the ALJ's assessment of her residual functional capacity was erroneously deemed not credible. *See* Pet.'s Brief, p. 8 (Docket No. 18). A claimant's credibility cannot turn solely upon whether her testimony neatly aligns with her residual functional capacity assessment; otherwise nearly every claimant's credibility would be questioned on appeal. *See, e.g.*, *Kilbourne v. Comm'r of Soc. Sec.*, 2011 WL 1357330, at *4 (D. Or. 2011). The ALJ here did not make such a mistake; instead, he properly analyzed the record (including Petitioner's testimony) to determine Petitioner's residual functional capacity and, in doing so, weighed Petitioner's testimony against what the record revealed by way of her ability to perform work-related tasks. *See infra*. In other words, though the use of such common boilerplate language runs the risk of "getting things backwards," its mere use is not cause for remand if the ALJ's conclusion is followed by sufficient reasoning. *See, e.g.*, *Jones v. Comm. of Soc. Sec.*, 2012 WL 6184941, at *4 (D. Or. 2012) (boilerplate language is conclusion which may be affirmed if ALJ's stated reasons for rejecting plaintiff's testimony are clear and convincing); *Bowers v. Astrue*, 2012 WL 2401642, at *9 (D. Or. 2012) (concluding that this language erroneously reverses analysis, but finding such error harmless because ALJ cited other clear and convincing reasons for rejecting claimant's testimony).

**MEMORANDUM DECISION AND ORDER - 11**

offset by the fact that the record reflects that the surgery was successful in removing all cancerous growth.").[6] As such, the ALJ appropriately concluded that "[Petitioner's] complaints of disabling pain and associated symptoms from her cancer were not supported by the objective treatment notes." (AR 28); *see also* (AR 82) (medical expert, Thomas E. Atkin, testifying at hearing that "chemo-fog and having problems secondary to chemotherapy is not unusual. However . . . we don't have anything in the record that quantifies any kind of limitation secondary to that.").

The ALJ also made reference to the absence of treatment records suggestive of any debilitating mental impairment. (AR 28). While the fact that Petitioner may not have been able

---

[6] Petitioner selectively challenges aspects of the ALJ's determination in this respect, arguing that, contrary to the ALJ's suggestions otherwise, she did experience complications and side effects from chemotherapy and radiation treatment. *See* Pet.'s Brief, pp. 8-9 (Docket No. 18). However, even if some complications existed, it is clear, as noted by the ALJ, that the medical evidence reflects a situation where Petitioner's cancer was effectively treated from a disability standpoint. (AR 27-28) (citing (AR 567) (as of 11/15/10, indicating Petitioner "is feeling quite well," "her nausea is completely improved," her "energy level is slowly improving," that "there is a chance that she has acquired a new job," and "she is very excited about the possibility of regaining employment"); (AR 565) (as of 11/22/10, indicating Petitioner tolerated treatment goal "extremely well"); (AR 620) (as of 1/24/11, indicating Petitioner "completely recovered" from encephalopathy, "works at a counter" (but describes being unable to do so because of fatigue), "denies any significant pain" for which she occasionally takes over-the-counter medication, and "is in complete remission"); (AR 624) (as of 5/2/11, stressing "importance of daily exercise seven days a week" and indicating that Petitioner "complains of fatigue" but "works at a front desk of a hotel in Nampa"); (AR 626) (as of 8/25/11, indicating Petitioner "has postoperative pain, but is now on just occasional analgesics," "complains of mild fatigue," "is exercising and stretching," "is in complete remission," and "is NED [no evidence of disease]"); (AR 628) (as of 8/25/11, Petitioner indicating she has been doing "great," "denies any nausea or vomiting," "has had no flank pain," "no dysuria or hematuria," "no cough or shortness of breath," "no headaches," "no complaints at all at the present time," pain as 3/10, and "in no acute distress")). Additionally, Petitioner's testimony at the hearing that Dr. Zuckerman told her that chemotherapy caused her brain damage (AR 75-77) is not even remotely suggested within Dr. Zuckerman's treatment notes. *See supra*. Likewise, Petitioner's testimony that her pain registers an 8/10 "every day" (AR 64-65) conflicts with what she told Dr. Smith in August 2011; at that time, Petitioner told Dr. Smith that her pain was 3/10. *See supra*.

**MEMORANDUM DECISION AND ORDER - 12**

to afford certain treatments is not dispositive on the issue of Petitioner's credibility, the fact remains that no medical professional opined that Petitioner is unable to work due to her bipolar disorder or depression (both of which the ALJ nonetheless considered to be severe (*see supra*)).[7] Petitioner's reliance on Dr. Johnston's December 20, 2008 "Psychological Evaluation" does not change this fact. *See* Pet.'s Brief, p. 10 (Docket No. 18). There, it is true that Dr. Johnston identified certain of Petitioner's "functional limitations," but he specifically went on to discuss "job considerations" that listed no less than 13 "possible jobs suited for [Petitioner's] personality" – despite Petitioner's previously-identified functional limitations. (AR 614-619). To this end, it is undisputed that Dr. Johnston's opinions preceded Petitioner's alleged disability onset date by roughly 16 months, during which time Petitioner presumably continued to work and, thus, could not have been considered disabled under the Social Security Act. *See, e.g.*, *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance."); *see also* (AR 86) (medical expert, Thomas E. Atkin, testifying at hearing that Dr. Johnston's report reflects limitations that "have been in existence for somewhere between 15 years or longer.").

Finally, the ALJ considered Petitioner's daily activities (reflected in Petitioner's occasional, post-alleged disability onset date work activity) in his credibility analysis – if a claimant engages in numerous daily activities involving skills that could be transferred to the

---

[7] This decision was made even though the physicians employed by the Disability Determination Services found that Petitioner's bipolar disorder and depression were *not* severe for the requisite duration. (AR 550-563) ("The medical evidence does not fully support the [Petitioner's] statements regarding her physical and mental allegations. Therefore, the [Petitioner] is considered partially credible."). Instead, the ALJ adopted the testimony of the medical expert, Thomas E. Atkin, a clinical psychologist, who testified at the hearing that he considered Petitioner's bipolar disorder and depression to be severe, but still opined that there is nothing in the record precluding Petitioner from working. (AR 28 & 84-88).

**MEMORANDUM DECISION AND ORDER - 13**

workplace, the ALJ properly may question that claimant's allegations. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). In apparent incongruity with Petitioner's complaints of disabling pain, the ALJ referenced evidence in the record indicating that Petitioner has worked after her alleged disability onset date. (AR 24 & 29). According to the ALJ, even though such instances "did not constitute disqualifying substantial gainful activity," they do "indicate that [Petitioner's] daily activities have, at least at times, been somewhat greater than the [Petitioner] has generally reported." (AR 29); *see also, e.g.*, *Fair*, 885 F.2d at 602 ("[I]f a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain."). On such evidence, it is proper for the ALJ to conclude that the effects of her symptoms are not as severe as Petitioner alleges.

Besides critiquing the ALJ's references to the record and overall conclusions on these points, Petitioner does not cite to any evidence supporting an actual claim of disability. *See Burch* at 681 (lack of medical evidence cannot form solid basis for discounting pain testimony, but can be considered by ALJ in credibility analysis).[8] While such a reality, considered separately, may not conclusively rebut Petitioner's claims of disability, when combined with the other reasons offered by the ALJ, they collectively support the ALJ's conclusions concerning

---

[8] Petitioner submits that, at the very least, the ALJ should have considered a 12-month, closed period of disability while "she was receiving chemotherapy, radiation therapy, or recovering from the effects of these treatments." Pet.'s Brief, pp. 10-11 (Docket No. 18). However, the record reveals that, within a year of her cancer diagnosis in March 2010, she either was working, or looking to work. *See* (AR 567) (as of 11/15/10, "[t]here is a chance that she has acquired a new job" and that "she is very excited about the possibility of regaining employment"). Moreover, even if Petitioner herself claimed to be unable to stand eight hours per day as of January 24, 2011 (*see* (AR 620)), it does not follow that she is completely incapable of performing light work as the ALJ ultimately found (even if, in fact, the extent of her physical limitations during this time were supported by the medical evidence). *See infra*.

**MEMORANDUM DECISION AND ORDER - 14**

Petitioner's credibility.  *See* 20 C.F.R. § 416.929(a) ("In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence, and other evidence."); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (holding that "contradictions between claimant's testimony and the relevant medical evidence" provided clear and convincing reason for ALJ to reject petitioner's subjective symptom testimony).

Therefore, clear and convincing reasons arguably exist as to why the ALJ did not find Petitioner's testimony entirely credible.  This is not to say, however, that *this* Court conclusively finds Petitioner not to be disabled under the applicable rules and regulations or that Petitioner does not suffer from chronic pain; indeed, as expected, Petitioner tries to identify somewhat conflicting evidence in support of her position.  While such conflicting evidence may not have been given the weight Petitioner would have preferred, the ALJ's decision to doubt Petitioner's credibility in denying disability benefits contains clear and convincing reasons for doing so.  As required by controlling law, the ALJ will not be second-guessed here.  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision.") (internal citations omitted).  Therefore, the Court will not substitute its judgment when the evidence in the record can support the ALJ's findings.

    3.    <u>Petitioner's Residual Functional Capacity</u>

An applicant's residual functional capacity is an assessment of that individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis – in other words, what an individual can still do despite her limitations.  *See*

**MEMORANDUM DECISION AND ORDER - 15**

SSR 96-8P. In assessing an applicant's residual functional capacity, the ALJ must consider all of the relevant evidence in the case record, including information about the individual's symptoms and any "medical source statements" submitted by an individual's treating source or other acceptable medical sources. *See id.* An ALJ's residual functional capacity determination is upheld if it is supported by substantial evidence. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). Here, Petitioner contends that the ALJ was mistaken as a matter of law in his conclusion that Petitioner has the residual functional capacity to perform light work in low stress environments (AR 26), arguing that he "failed to include restrictions well-supported by the evidence." Pl.'s Brief, p. 12 (Docket No. 18). The Court disagrees.

"Light work" is defined as:

> [L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities . . . .

20 C.F.R. § 404.1567(b). Petitioner's June 10, 2010 "Physical Residual Functional Capacity Assessment" clearly aligns with this definition. There, Dr. Dickey reviewed Petitioner's medical file and concluded that Petitioner (1) could occasionally lift 20 pounds; (2) could frequently lift 10 pounds; (3) could stand and/or walk (with normal breaks) for about six hours in an eight-hour workday; (4) could sit (with normal breaks) for about six hours in an eight-hour workday; (5) was not limited in pushing or pulling; (6) had no postural limitations; (7) had only limited fingering manipulations (*see supra*), but otherwise no manipulative limitations; (8) had no visual limitations; (9) had no communicative limitations; and (10) had not environmental limitations.

**MEMORANDUM DECISION AND ORDER - 16**

(AR 459-466). Importantly, Dr. Dickey also indicated that "[n]o opinions from [treating sources] regarding [Petitioner's] durational or restrictions" existed in the file. (AR 465).

Yet, Petitioner represents that she has restrictions that are "well-supported by the evidence." *See supra*. But her instances of "well-supported" evidence seem to fall short of that rhetorical marker. Petitioner claims to have "testified" that she sleeps excessively (20 hours per day). *See* Pet.'s Brief, p. 12 (Docket No. 18). Other than in the hearing, there is no such corresponding documentation in the record. Furthermore, Petitioner's continued reliance upon Dr. Johnston's December 20, 2008 "Psychological Evaluation" and its referenced "functional limitations" (*see id.*) misses the point – again, Dr. Johnston's evaluation not only came before Petitioner's alleged disability onset date, he also listed multiple jobs suited to Petitioner's abilities, even considering any limitations she might have had as of that time. *See supra*; *see also* (AR 82-83) (medical expert, Thomas E. Atkin, discussing Dr. Johnston's diagnostic testing and testifying at hearing that "as is indicated in the record, [Petitioner] has functioned cognitively within an acceptable range since that stroke" and that, while it is reasonable to assume that Petitioner had some deficits as a result of stroke, "she's still within the normal range."). Finally, to the extent Petitioner claims that the ALJ failed to properly develop the record in reaching an opinion as to her residual functional capacity assessment (*see* Pet.'s Brief, pp. 10 & 12 (Docket No. 18)), such a duty is only triggered when there is "ambiguous evidence" or the ALJ has found "the record inadequate to allow for proper evaluation of the evidence." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). But here, there is no ambiguous evidence – there is arguably not even conflicting evidence from treatment notes supporting Petitioner's alleged wholesale inability to work at all.

**MEMORANDUM DECISION AND ORDER - 17**

With all of this in mind, the ALJ acknowledged Petitioner's verifiable limitations in concluding that she had the residual functional capacity to perform light work – still tempering that conclusion in stating that such work should be low in stress. This Court in its review is not charged with making a disability determination; rather, it must assess whether the ALJ's findings are supported by the record. In undergoing such a review, it cannot be said that the ALJ disregarded Petitioner's medical history. This conclusion, while potentially at odds with another's interpretation of the same record, is nonetheless supported by specific and legitimate reasons, consistent with evidence in the record. As a result, the ALJ's decision will not be disturbed here.

## IV. <u>CONCLUSION</u>

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. *See Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ. *See Key*, 754 F.2d at 1549.

The evidence upon which the ALJ relied can reasonably and rationally support his well-formed conclusions, despite the fact that such evidence may be susceptible to a different interpretation. Accordingly, the ALJ's decision as to Petitioner's alleged disability is based on proper legal standards and supported by substantial evidence. Therefore, I conclude that the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

The Commissioner's decision is affirmed.

**MEMORANDUM DECISION AND ORDER - 18**

## V.  ORDER

Based on the foregoing, the decision of the Commissioner is AFFIRMED and this action is DISMISSED in its entirety with prejudice.

DATED:  **September 24, 2014**

Honorable Ronald E. Bush
U. S. Magistrate Judge